UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
AMY MECKELER,

                        Plaintiff,

      -against-

CORNELL UNIVERSITY, NEW YORK STATE
COLLEGE OF HUMAN ECOLOGY, and
RACHEL DUNIFON,

                        Defendants.
------------------------------------------------------------------------X

Docket No.: 3:23-cv-00773 (TJM/ML)

**COMPLAINT**

**Plaintiff Demands a Trial by Jury**

AMY MECKELER (hereinafter, "Plaintiff"), by and through her attorneys, THE RUSSELL FRIEDMAN LAW GROUP, LLP, complaining of Defendants, CORNELL UNIVERSITY, NEW YORK STATE COLLEGE OF HUMAN ECOLOGY, and RACHEL DUNIFON (collectively hereinafter, "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is an action arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and under the New York State Human Rights Law, N.Y. Executive Law § 296, *et seq* (the "NYSHRL")., seeking to redress employment discrimination against Plaintiff in her employment by Defendants on the basis of Plaintiff's sex/gender, for aiding, abetting, inciting, compelling, or coercing discriminatory and retaliatory acts forbidden by the NYSHRL, hostile work environment, and for retaliation taken against Plaintiff after voicing complaints about said discrimination by Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e and 28 U.S.C. §§ 1331 and 1343.

1

3. Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), on the basis that it is the judicial district in the State in which the unlawful employment practices are alleged to have been committed; it is the judicial district in which the employment records relevant to such practice are maintained and administered; and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred therein.

4. This Court has supplemental jurisdiction over Plaintiff's New York state law claims pursuant to 28 U.S.C. § 1367, as they are so related in this action with such original federal question jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**PARTIES**

5. At all times relevant, Plaintiff AMY MECKELER was a citizen of the United States who resided in Schuyler County, State of New York. Plaintiff became a resident of Hudson County, State of New Jersey subsequent to her termination by Defendants.

6. At all times relevant, Defendant CORNELL UNIVERSITY ("CORNELL") was and is a private university organized and incorporated under the laws of the State of New York and conducts business pursuant to, and by virtue of, the laws of the State of New York.

7. At all times relevant, Defendant CORNELL was and is an educational institution maintaining a university in Ithaca, New York, and maintains its principal place of business Tompkins County, NY.

8. At all relevant times, Defendant NEW YORK STATE COLLEGE OF HUMAN ECOLOGY ("NYSCHE") is a university created pursuant to New York Education Law § 5714 and is located at Cornell University, 170 Martha Van Rensselaer Hall, Ithaca, NY 14853.

9. At all times relevant, upon information and belief, Defendant RACHEL DUNIFON ("DUNIFON") was and is an employee of Defendant CORNELL and/or NYSCHE with the title of The Rebecca Q. and James C. Morgan Dean of the College of Human Ecology and is being sued in her individual and official capacity.

**ADMINISTRATIVE AND PROCEDURAL HISTORY**

10. Plaintiff timely filed a charge of employment discrimination against Defendants with the U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") on or about December 7, 2022, under EEOC Charge No.: 520-2023-02811.

11. Plaintiff received a Notice of Right to Sue from the EEOC dated March 29, 2023, concerning the herein charges of discrimination. A copy of the Notice is annexed hereto as **Exhibit "1"**.

12. Plaintiff's Complaint is filed within ninety (90) days of receipt of said Notice of Right to Sue.

**STATEMENT OF FACTS**

13. Plaintiff is an adult gay female.

14. In or around June 2016, Plaintiff was hired by Defendants in the role of Assistant Dean for Communications of NYSCHE, with her duties concerning Defendants' marketing and communications.

15. In her role as Assistant Dean, Plaintiff earned approximately $140,000 per annum, with associated benefits such as health insurance and a 401k.

16. During her time employed by Defendants, Plaintiff was never disciplined, never consulted for her attendance, and never received anything but positive performance evaluations.

17. In or around Spring 2018, Defendant DUNIFON became Interim Dean of NYSCHE, making her Plaintiff's direct superior. DUNIFON became full-term Dean two (2) years later, continuing her role as Plaintiff's direct superior.

18. During her time working with Defendants, Plaintiff's interactions with DUNIFON were professional and civil leading up to the Covid-19 pandemic. Plaintiff was given authority to hire a new manager to assist Plaintiff as a deputy, which deputy would manage a large and demanding portfolio for which Plaintiff was ultimately responsible. However, once the Covid-19 pandemic began, CORNELL and NYSCHE put a hiring freeze in place, preventing Plaintiff from completing the search process and getting the help she desperately needed. Plaintiff's circumstances qualified for an exception to the hiring freeze according to CORNELL and NYSCHE's own protocols, including that she had already been interviewing final candidates. Despite that, DUNIFON refused to make an exception for Plaintiff's deputy position, even given the critical importance of that position to Plaintiff's ability to meet the organization's needs.

19. Given that Plaintiff's workload had already been a challenge prior to the pandemic, and that Plaintiff was now not allowed to hire a desperately needed manager, Plaintiff's job became triaging the necessary work in the college. Being that Plaintiff was thus overworked, she was consequently unable to participate in communal executive activities and functions that she would normally attend. Plaintiff made multiple suggestions to address the unreasonable workload and allow Plaintiff to focus on her leadership responsibilities and asked for potential solutions, but DUNIFON provided no relief.

20. During the pandemic, as Plaintiff and DUNIFON continued to work together, Plaintiff began to recognize an escalating state of tension between the two, with DUNIFON's tone becoming increasingly terse. Plaintiff suspected this change in DUNIFON's behavior to be the

product of the pandemic and other stressors, but it nonetheless left Plaintiff as the verbal victim of DUNIFON's stress. In this respect, Plaintiff began to notice condescending and derogatory behavior that either outright referenced her sexual orientation, or which demonstrated a prejudice thereof, as they often involved gay stereotypes. Notably, Plaintiff was the only openly gay individual on DUNIFON's executive leadership team.

21. In January 2021, Plaintiff was finally given authority to hire a manager, who would be scheduled to start in late July 2021. During this intervening time, Plaintiff had one key employee on a performance improvement plan, who subsequently separated from the college in June 2021 and was replaced by a new-hire in July 2021. Plaintiff onboarded both new employees through December 2021. Thus, while Plaintiff was figuratively "saved" by being granted permission to hire in January 2021, in truth her salvation came more than six (6) months in the future.

22. On or about September 3, 2021, Plaintiff and DUNIFON were on a virtual call with clients for an editing meeting. Plaintiff was in her office listening carefully to the clients' input and taking notes, and DUNIFON across the hall in hers. When the meeting ended DUNIFON immediately came to Plaintiff's office, knocked on the door, and began a berating conversation with Plaintiff while DUNIFON stood in the threshold in full view and earshot of other employees, in sum and substance, as follows:

| | |
|---|---|
| D ("DUNIFON"): | "Is everything OK?" |
| P ("Plaintiff"): | "Yes, I think so, why?" |
| D: | "You were very disengaged in the meeting. I thought you wanted more leadership opportunities?" |
| P: | "I'm sorry, I felt I was engaged in the meeting. By leadership in the past, I was referring to having to hire a manager. I spoke with you about that and |

|   |   |
|---|---|
|   | about feeling excluded.  This writing project isn't what I meant." |
|   | *pause* |
| P: | "Regardless, I'm the writer, I was taking their input. They were engaged, I'm mindful of the deadline.  I was taking the input and making notes for the next draft." |
| D: | "Are you overwhelmed?" |
| P: | "No, I have a lot of balls in the air, but I'm not overwhelmed." |
| D: | "But you're fully staffed now!" |
| "P: | Yes, and they just started a month ago.  I'm still onboarding them…Regardless, I feel like I was involved in the meeting." |

23. The conversation ended, and Plaintiff wrote an e-mail to their client stating how excited she was for the project.  Plaintiff then worked through the Labor Day holiday weekend to complete the project incorporating input from the call with the client and from DUNIFON.  Upon returning from the holiday, DUNIFON called Plaintiff into a meeting and accused Plaintiff of being unable "to take feedback."

24. Plaintiff then reported this behavior to the Title IX office, alleging sex/gender discrimination on the basis of her sex/gender and/or sexual orientation.  The Title IX investigator subsequently facilitated one (1) meeting in late December right before winter break with DUNIFON, Plaintiff, and a Human Resources ("HR") representative.  Given the apathetic response, Plaintiff felt that her complaints were minimized.

25. From this point on, Plaintiff felt excluded, marginalized, and set-up.  For example, she was excluded from critical meetings, ignored, talked down to, and made the subject of mockery and stereotypical references to her gender and sexual orientation.  In a specific example, a new

6

assistant dean was hired for alumni affairs and development, an entirely separate department, and this new assistant dean talked down to Plaintiff and tried to delegate tasks to her. When Plaintiff raised this issue with DUNIFON, she deflected and told Plaintiff that they had combined the two offices – Communications and Alumni Affairs and Development – in another college at the University. When Plaintiff responded by noting that, if such a change were to happen in their department, there should be a discussion about the leadership structure, DUNIFON had no response and provided no support to Plaintiff.

26. In December 2021, Plaintiff began a College re-branding effort, a monumental task requiring approximately seven (7) months of collaborative effort. This was an extremely expansive and expensive project with complicated contracts and was a project Plaintiff had been working toward since her hire in 2016.

27. In March 2022, Plaintiff received her first and only negative performance evaluation by DUNIFON. Plaintiff's behavior was tagged, and she was described as "not open to feedback," "aggressively resistant," "overly defensive," and "combative," words universally considered as derogatory and stereotypical language used to demean lesbians and as a not-so-veiled reference to making discrimination complaints. Plaintiff was naturally offended, and realized her supervisors were not trying to be subtle about their discrimination anymore.

28. On April 14, 2022, when everything in the entire re-branding project was done in order to launch the project in May, Plaintiff went to DUNIFON for the literal last act of the launch, that being DUNIFON signing the contract that the vendor, DUNIFON, and Plaintiff had already agreed to, DUNIFON said: "I've decided to postpone the project until the fall….I have concerns about your leadership." At no point during the course of this large project had DUNIFON given Plaintiff any feedback that she had concerns with Plaintiff's leadership on the project. Plaintiff was

obviously stunned. Upon information and belief, this was done to undermine Plaintiff and to prevent her from having significant accomplishments in the recent past so that she would be easier to terminate.

29. Having Plaintiff do a colossal amount of work only to postpone it as she completed the task was mentally and emotionally destabilizing for Plaintiff. Plaintiff had already had two (2) full years of being understaffed and tremendously overworked. On top of it, she had been ostracized for raising an issue with the Title IX office for the way she was being treated by a superior. Now, she was clearly being retaliated against for making that complaint.

30. Thus, Plaintiff was forced to take a mental-health leave on short-term disability from April 19, 2022 through May 31, 2022, and was cleared and ready to return to work on June 1, 2022. During her leave, Plaintiff was in communication with the Title IX office.

31. On June 11, 2022, Plaintiff received an e-mail from DUNIFON stating that her supervisory duties had been suspended and that she was to work on an independent project until DUNIFON and Assistant Dean for Human Resources Sandy Dhimitri scheduled a meeting to discuss Plaintiff's performance.

32. On June 15, 2022, Plaintiff was terminated, exactly two (2) weeks following her return from disability.

33. Upon information and belief, Defendants' termination of Plaintiff was motivated by unlawful discrimination based on sex/gender, and because of Plaintiff's filing of a protected complaint.

34. Defendants' actions were willful and/or malicious.

## AS AND FOR A FIRST CAUSE OF ACTION
*Sex/Gender Discrimination in Violation of*
*Title VII of the Civil Rights Act of 1964*
*Against All Defendants*

35. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

36. Defendants' acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her sex/gender in violation of 42 U.S.C. § 2000e, *et seq*.

37. As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
*Hostile Work Environment in Violation of*
*Title VII of the Civil Rights Act of 1964*
*Against All Defendants*

38. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

39. Defendants' acts, practices, and policies described herein constitute severe and/or pervasive harassment on the basis of her sex/gender, which harassment created a hostile work environment in violation of 42 U.S.C. § 2000e, *et seq*.

40.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
*Retaliation in Violation of*
*Title VII of the Civil Rights Act of 1964*
*Against All Defendants*

41.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

42.     Defendants' acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her sex/gender in violation of 42 U.S.C. § 2000e, *et seq*.

43.     Plaintiff made protected complaints of discriminatory behaviors and practices to her supervisors and the HR department. This was known to Defendants at, around, or shortly after the date of Plaintiff making the complaint.

44.     In direct response to Plaintiff's protected complaints, Defendants engaged in an ongoing pattern of materially adverse job action practices against Plaintiff, including, *inter alia*, unwarranted and malicious discipline; unwarranted warnings and criticisms of her performance; unwarranted reassignment to a different position; interference with her ability to perform her duties; unwarranted changes to her caseload; the making of threatening comments and threats about how Plaintiff could lose her job or suffer arbitrary changes because she engaged in this

protected activity; hostile, threatening, humiliating, and aggressive unfair treatment of Plaintiff, including in front of her co-workers; unfair deprivation of opportunities and future advancement; and termination within a few weeks of Plaintiff's protected activity.

45. Defendants' actions would tend to dissuade an individual of reasonable firmness from making or supporting a claim of violation of civil rights and would have an overall chilling effect.

46. As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

## AS AND FOR A FOURTH CAUSE OF ACTION
*Sex/ Gender Discrimination in Violation of*
*New York State Human Rights Law*
*Against Defendant Cornell*

47. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

48. Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her sex/gender in violation of New York Executive Law § 296, *et seq*.

49. Individual Defendants aided and abetted the discriminatory and retaliatory conducts described herein.

50. As a direct and proximate consequence of Defendant's unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

### AS AND FOR A FIFTH CAUSE OF ACTION
*Hostile Work Environment in Violation of*
*New York Human Rights Law*
*Against Defendant Cornell*

51. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

52. Defendant's acts, practices, and policies described herein created a hostile work environment on the basis of her sex/gender in violation of New York Executive Law § 296, *et seq*.

53. As a direct and proximate consequence of Defendant's unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

## AS AND FOR A SIXTH CAUSE OF ACTION
*Retaliation in Violation of*
*New York State Human Rights Law*
*Against Defendant Cornell*

54. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

55. Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her sex/gender in violation of New York Executive Law § 296, *et seq*.

56. Plaintiff made protected complaints of discriminatory behaviors and practices to her supervisors and the HR department. This was known to Defendants at, around, or shortly after the date of Plaintiff making the complaint.

57. In direct response to Plaintiff's protected complaints, Defendant engaged in an ongoing pattern of materially adverse job action practices against Plaintiff, including, *inter alia*, unwarranted and malicious discipline; unwarranted warnings and criticisms of her performance; unwarranted reassignment to a different position; interference with her ability to perform her duties; unwarranted changes to her caseload; the making of threatening comments and threats about how Plaintiff could lose her job or suffer arbitrary changes because she engaged in this protected activity; hostile, threatening, humiliating, and aggressive unfair treatment of Plaintiff, including in front of her co-workers; unfair deprivation of opportunities and future advancement; and termination within a few weeks of Plaintiff's return from her medical leave.

58. Defendant's actions would tend to dissuade an individual of reasonable firmness from making or supporting a claim of violation of civil rights and would have an overall chilling effect.

59. As a direct and proximate consequence of Defendant's unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Amy Meckeler respectfully requests judgment against Defendants as follows:

A. Under the First Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

B. Under the Second Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

C. Under the Third Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

D. Under the Fourth Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

E. Under the Fifth Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

F. Under the Sixth Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

G. For all pre-judgment interest and post-judgment interest available under law; and

  H. Such other and further relief as the Court deems necessary, just, and proper.

Dated: Garden City, New York
   June 26, 2023

          Respectfully Submitted,
          **THE RUSSELL FRIEDMAN LAW GROUP, LLP**
          *Attorneys for Plaintiff, Amy Meckeler*

     By: /s/*Pablo A. Fernandez*
        Pablo A. Fernandez, Esq.
        400 Garden City Plaza, Suite 500
        Garden City, New York 11530
        Tel: 516.355.9696
        Email: pfernandez@rfriedmanlaw.com