UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMY MECKELER,

                              Plaintiff,

              v.                                        3:23-CV-773
                                                         (FJS/ML)

CORNELL UNIVERSITY, NEW YORK STATE
COLLEGE OF HUMAN ECOLOGY, and
RACHEL DUNIFON,

                  Defendants.
_____

APPEARANCES                                OF COUNSEL

THE RUSSELL FRIEDMAN LAW GROUP, LLP    PABLO A. FERNANDEZ, ESQ.
400 Garden City Plaza                  RYAN C. WOODWORTH, ESQ.
Suite 500
Garden City, New York 11530
        -- and –
16 West Main Street, Suite 207
Rochester, New York 14614
Attorneys for Plaintiff

CORNELL UNIVERISTY OFFICE OF COUNSEL   ADAM PENCE, ESQ.
300 CCC Building                       CONRAD R. WOLAN, ESQ.
235 Garden Avenue                      VALERIE L. DORN, ESQ.
Ithaca, New York 14853
Attorneys for Defendants

SCULLIN, Senior Judge[1]

_____

[1] This case was originally assigned to the Hon. Thomas J McAvoy, Senior U.S. District Judge and has been reassigned to the undersigned.

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Amy Meckeler commenced this employment discrimination action asserting claims of sex/gender discrimination on account of sexual orientation, hostile work environment on account of sexual orientation, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and the New York State Human Rights Law ("NYSHRL"). *See* Dkt. No. 1, Compl. Defendants have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint in its entirety. *See* Dkt. No. 9. Plaintiff opposed the motion in part and requested leave to amend. *See* Dkt. No. 12. Defendants filed a reply. *See* Dkt. No. 13.

**II. ALLEGATIONS IN THE COMPLAINT[2]**

In or around June 2016, Plaintiff, an adult gay female, was hired in the role of Assistant Dean for Communications of New York State College of Human Ecology at Cornell University ("NYSCHE"),[3] with her duties concerning Defendants' marketing and communications. During

---

[2] The Court accepts as true all non-conclusory factual allegations and draws all reasonable inferences in Plaintiff's favor. The Court does not credit legal conclusions presented as factual contentions.

[3] Defendants point out that NYSCHE operates as a unit of Cornell University, not as a state entity or separate corporation. *See* Dkt. No. 9-1 at 2, n. 1 (citing N.Y. Educ Law § 5714(3) ("The Cornell university . . . shall, as the representative of the state university trustees, with whatever state moneys may be received for the purpose, administer the said college of human ecology as to the establishment of courses of study, the creation of departments and positions, the determination of the number and salaries of members of the faculty and other employees thereof, the employment and appointment thereof, the maintenance of discipline and as to all matters pertaining to its educational policies, activities and operations, including research work.")).

her employment, Plaintiff was never disciplined or consulted about her attendance and received only positive performance evaluations until March 2022. *See* Compl. at ¶¶ 13-14, 16, 27. The circumstances surrounding the March 2022 negative performance evaluation, received from Defendant Rachel Dunifon, are addressed below.

In or around Spring 2018, Defendant Dunifon became Interim Dean of NYSCHE, making her Plaintiff's direct superior. Defendant Dunifon became full-term Dean two (2) years later, continuing her role as Plaintiff's direct superior. *See id.* at ¶ 17. Plaintiff describes her "interactions with [Defendant Dunifon as] professional and civil leading up to the [COVID-19] pandemic." *See* Compl. at ¶ 18. Plaintiff asserts that she was given authority to hire a new manager to assist Plaintiff as a deputy, "which deputy would manage a large and demanding portfolio for which Plaintiff was ultimately responsible. However, once the [COVID-19] pandemic began, CORNELL and NYSCHE put a hiring freeze in place, preventing Plaintiff from completing the search process and getting the help she desperately needed." *See id.* Plaintiff contends that her "circumstances qualified for an exception to the hiring freeze according to CORNELL and NYSCHE's own protocols, including that she had already been interviewing final candidates. Despite that, DUNIFON refused to make an exception for Plaintiff's deputy position, even given the critical importance of that position to Plaintiff's ability to meet the organization's needs." *See id.* Plaintiff alleges that, "[g]iven that [her] workload had already been a challenge prior to the pandemic, and that [she] was now not allowed to hire a desperately needed manager, Plaintiff's job became triaging the necessary work in the college." *See id.*

Plaintiff asserts that, because she was "overworked, she was consequently unable to participate in communal executive activities and functions that she would normally attend." *See id.* at ¶ 19. Plaintiff "made multiple suggestions to address the unreasonable workload and allow

Plaintiff to focus on her leadership responsibilities and asked for potential solutions, but DUNIFON provided no relief." *See id.*

"During the pandemic . . . Plaintiff began to recognize an escalating state of tension between" her and Defendant Dunifon, with Defendant Dunifon's "tone becoming increasingly terse." *See id.* at ¶ 20. Plaintiff "suspected this change in DUNIFON's behavior to be the product of the pandemic and other stressors, but it nonetheless left Plaintiff as the verbal victim of DUNIFON's stress." *Id.* Plaintiff contends: "In this respect, Plaintiff began to notice condescending and derogatory behavior that either outright referenced her sexual orientation, or which demonstrated a prejudice thereof, as they often involved gay stereotypes. Notably, Plaintiff was the only openly gay individual on DUNIFON's executive leadership team." *Id.*

In January 2021, Plaintiff was given authority to hire a manager who would be scheduled to start in late July 2021. *See id.* at ¶ 21. Plaintiff asserts that, during this intervening time, she had "one key employee on a performance improvement plan, who subsequently separated from the college in June 2021 and was replaced by a new-hire in July 2021. Plaintiff onboarded both new employees through December 2021." *See id.*

Plaintiff's subsequent interactions with Defendant Dunifon caused her to file a complaint with Cornell's Title IX office. In this regard, Plaintiff asserts the following:

> 22. On or about September 3, 2021, Plaintiff and DUNIFON were on a virtual call with clients for an editing meeting. Plaintiff was in her office listening carefully to the clients' input and taking notes, and DUNIFON across the hall in hers. When the meeting ended DUNIFON immediately came to Plaintiff's office, knocked on the door, and began a berating conversation with Plaintiff while DUNIFON stood in the threshold in full view and earshot of other employees, in sum and substance, as follows:
>
> D ("DUNIFON"): "Is everything OK?"
>
> P ("Plaintiff"): "Yes, I think so, why?"

4

D: "You were very disengaged in the meeting.  I thought you wanted more leadership opportunities?"

P: "I'm sorry, I felt I was engaged in the meeting.  By leadership in the past, I was referring to having to hire a manager.  I spoke with you about that and about feeling excluded.  This writing project isn't what I meant."

\*pause\*

P: "Regardless, I'm the writer, I was taking their input. They were engaged, I'm mindful of the deadline.  I was taking the input and making notes for the next draft."

D: "Are you overwhelmed?"

P: "No, I have a lot of balls in the air, but I'm not overwhelmed."

D: "But you're fully staffed now!"

P: "Yes, and they just started a month ago.  I'm still onboarding them. … Regardless, I feel like I was involved in the meeting."

23. The conversation ended, and Plaintiff wrote an e-mail to their client stating how excited she was for the project.  Plaintiff then worked through the Labor Day holiday weekend to complete the project incorporating input from the call with the client and from DUNIFON.  Upon returning from the holiday, DUNIFON called Plaintiff into a meeting and accused Plaintiff of being unable "to take feedback."

24. Plaintiff then reported this behavior to the Title IX office, alleging sex/gender discrimination on the basis of her sex/gender and/or sexual orientation.  The Title IX investigator subsequently facilitated one (1) meeting in late December right before winter break with DUNIFON, Plaintiff, and a Human Resources ("HR") representative.  Given the apathetic response, Plaintiff felt that her complaints were minimized.

*See id.* at ¶¶ 22-24.

Plaintiff contends that "from this point on," she "felt excluded, marginalized, and set-up. For example, she was excluded from critical meetings, ignored, talked down to, and made the subject of mockery and stereotypical references to her gender and sexual orientation."  *See id.* at

5

¶ 25.  As a "specific example," Plaintiff asserts that "a new assistant dean was hired for alumni affairs and development, an entirely separate department, and this new assistant dean talked down to Plaintiff and tried to delegate tasks to her."  *Id.*  "When Plaintiff raised this issue with DUNIFON, she deflected and told Plaintiff that they had combined the two offices – Communications and Alumni Affairs and Development – in another college at the University. When Plaintiff responded by noting that, if such a change were to happen in their department, there should be a discussion about the leadership structure, DUNIFON had no response and provided no support to Plaintiff."  *See id.*

Plaintiff contends that in December 2021, she "began a College re-branding effort, a monumental task requiring approximately seven (7) months of collaborative effort."  *See id.* at ¶ 26.  Plaintiff asserts that this "was an extremely expansive and expensive project with complicated contracts and was a project Plaintiff had been working toward since her hire in 2016."  *Id.*  Plaintiff further asserts that, in March 2022, she received "her first and only negative performance evaluation by DUNIFON.  Plaintiff's behavior was tagged, and she was described as 'not open to feedback,' 'aggressively resistant,' 'overly defensive,' and 'combative,' words universally considered as derogatory and stereotypical language used to demean lesbians and as a not-so-veiled reference to making discrimination complaints."  *See id.* at ¶ 27.  Plaintiff contends that she "was naturally offended, and realized her supervisors were not trying to be subtle about their discrimination anymore."  *See id.*  Plaintiff maintains:

> 28. On April 14, 2022, when everything in the entire re-branding project was done in order to launch the project in May, Plaintiff went to DUNIFON for the literal last act of the launch, that being DUNIFON signing the contract that the vendor, DUNIFON, and Plaintiff had already agreed to, DUNIFON said: "I've decided to postpone the project until the fall…. I have concerns about your leadership."  At no point during the course of this large project had DUNIFON given Plaintiff any feedback that she had concerns with

Plaintiff's leadership on the project. Plaintiff was obviously stunned. Upon information and belief, this was done to undermine Plaintiff and to prevent her from having significant accomplishments in the recent past so that she would be easier to terminate.

29. Having Plaintiff do a colossal amount of work only to postpone it as she completed the task was mentally and emotionally destabilizing for Plaintiff. Plaintiff had already had two (2) full years of being understaffed and tremendously overworked. On top of it, she had been ostracized for raising an issue with the Title IX office for the way she was being treated by a superior. Now, she was clearly being retaliated against for making that complaint.

30. Thus, Plaintiff was forced to take a mental-health leave on short-term disability from April 19, 2022 through May 31, 2022, and was cleared and ready to return to work on June 1, 2022. During her leave, Plaintiff was in communication with the Title IX office.

31. On June 11, 2022, Plaintiff received an e-mail from DUNIFON stating that her supervisory duties had been suspended and that she was to work on an independent project until DUNIFON and Assistant Dean for Human Resources Sandy Dhimitri scheduled a meeting to discuss Plaintiff's performance.

32. On June 15, 2022, Plaintiff was terminated, exactly two (2) weeks following her return from disability.

33. Upon information and belief, Defendants' termination of Plaintiff was motivated by unlawful discrimination based on sex/gender, and because of Plaintiff's filing of a protected complaint.

*See id.* at ¶¶ 28-33.

The Complaint sets out six causes of action – Title VII claims against all Defendants alleging the following: sex/gender discrimination (First Cause of Action), hostile work environment (Second Cause of Action), and unlawful retaliation (Third Cause of Action); and NYSHRL claims against Defendant Cornell University alleging the following: sex/gender

discrimination (Fourth Cause of Action), hostile work environment (Fifth Cause of Action), and unlawful retaliation (Sixth Cause of Action).

## III. STANDARD OF REVIEW

On a motion to dismiss brought pursuant to Rule 12(b)(6), a court "must accept 'all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor.'" *Steele v. New York*, No. 5:20-CV-00220, 2021 U.S. Dist. LEXIS 54865, *8 (N.D.N.Y. Mar. 23, 2021) (quotation omitted). "'[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Marshall v. I-Flow, LLC*, No. 5:12-cv-721, 2012 U.S. Dist. LEXIS 110978, *5-*6 (N.D.N.Y. Aug. 7, 2012) (quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Steele*, 2021 U.S. Dist. LEXIS 54865 at *9 (quoting [*Ashcroft v. Iqbal*], 556 U.S. [662,] 678 [(2009)] (quoting *Twombly*, 550 U.S. at 570)). "A claim will only have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quotation omitted).

"'[D]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Marshall*, 2012 U.S. Dist. LEXIS 110978 at *6 (quotation omitted). "'The plausibility standard is not akin to a probability requirement, but it asks for more than a mere sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949

(quotation marks omitted)).  "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *Id.* (citation omitted).  "Unless a plaintiff's well-pleaded allegations have 'nudged [her] claims across the line from conceivable to plausible,' the complaint should be dismissed." *Steele*, 2021 U.S. Dist. LEXIS 54865 at *9-*10 (quoting *Twombly*, 550 U.S. at 570).

## IV. DISCUSSION

### A.      Title VII claims against Defendant Dunifon

Defendants argue that those portions of the Title VII claims (First, Second, and Third Causes of Action) asserted against Defendant Dunifon must be dismissed because individuals are not subject to Title VII liability in the Second Circuit.  *See* Dkt No. at 5-6.[4]  Plaintiff concedes this point and withdraws the Title VII claims against Defendant Dunifon.  *See* Dkt. No. 12-1 at 14.  Accordingly, the Court grants Defendants' motion in this regard and dismisses the Title VII claims asserted against Defendant Dunifon in the First, Second, and Third Causes of Action with prejudice.

### B.      Title VII and NYSHRL sexual orientation discrimination claims

Defendants seek to dismiss Plaintiff's Title VII and NYSHRL sexual orientation claims, which Plaintiff opposes.

---

[4] The Court refers to the page numbers in the parties' briefs, not the page numbers that the Court's Electronic Case Filing ("ECF") system produces.

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision," which can be shown "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citation omitted); *see Bledsoe v. Delta Air Lines, Inc.*, No. 23-CV-03146 (HG) (JAM), 2024 WL 1142321, *2 (E.D.N.Y. Mar. 15, 2024).  "At the pleading stage in a Title VII employment discrimination action, 'a plaintiff must plausibly allege that (1) the employer took adverse employment action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision.'" *Hanton v. Leung*, No. 23-CV-1421(LTS), 2023 WL 3978834, *3 (S.D.N.Y. June 12, 2023), *motion for relief from judgment denied,* No. 23-CV-1421 (LTS), 2023 WL 6972575 (S.D.N.Y. Oct. 20, 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).  Title VII encompasses sex discrimination claims based on an individual's sexual orientation.  *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 659-83 (2020).

"The NYSHRL prohibits an employer from, *inter alia*, 'discharg[ing] from employment' or 'discriminat[ing] against [an] individual in compensation or in terms, conditions or privileges of employment' 'because of' an individual's race, sexual orientation, or disability." *Bledsoe v. Delta Air Lines, Inc.*, No. 23-CV-03146 (HG) (JAM), 2024 WL 1142321, *2 (E.D.N.Y. Mar. 15, 2024) (quoting N.Y. Exec. Law § 296(1)(a); and *see also id.* §§ 292(21), (27), (37) (defining

these terms)).  "Historically, the NYSHRL's liability standard was coextensive with Title VII's, but recent amendments to the statute set it at a level either 'identical' to or at least 'closer' to the [New York City Human Rights Law ("NYCHRL")]."  *Bledsoe*, 2024 WL 1142321, at *2 (citing *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023)); *see Romero v. St. Vincent's Servs., Inc.*, No. 22-1476-cv, 2023 WL 3477161, *1, n.1 (2d Cir. May 16, 2023) (summary order) ("'We typically treat Title VII and NY[S]HRL discrimination claims as analytically identical, applying the same standard of proof to both claims.'" (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019) (quoting *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008) (parenthetical omitted)))).  "Intentional discrimination claims accrued prior to the August 12, 2019, amendment of the NYSHRL should be analyzed under the same standard as claims brought under Title VII."  *Farah v. Emirates & Emirates Severance Plan*, No. 21-CV-05786-LTS, 2024 WL 1374762, *5 (S.D.N.Y. Mar. 31, 2024) (citing *Tolbert v. Smith*, 730 F.3d 427, 438-39 (2d Cir. 2015)).  "NYSHRL discrimination claims accrued after August 12, 2019, must be construed 'liberally for the accomplishment of the remedial purpose of [the law]' and should now be interpreted as 'rendering a standard for claims closer to the standard of the NYCHRL.'"  *Id.* (quoting *Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (citations omitted)).[5]

---

[5] In August 2019, the NYSHRL was amended to provide that it "shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed."  N.Y. Exec. Law § 300.  "Accordingly, for claims that accrued after this amendment went into effect, . . . '"the standard for [NYSHRL discrimination] claims [is] closer to the standard of the NYCHRL."'"  *Mitchell v. New York City Dep't of Educ.*, No. 20 Civ. 1555 (PGG), 2024 WL 1175018, *9 n.4 (S.D.N.Y. Mar. 19, 2024) (quoting *Edelman v. NYU Langone Health Sys.*, 21 Civ. 502 (LGS), 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (second alteration in original) (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021))).

"At the pleading stage, under Title VII, a plaintiff does not need to allege specific facts establishing each element of a *prima facie* case of discrimination." *Bledsoe*, 2024 WL 1142321 at *3 (citing *Vega*, 801 F.3d at 86-87). "But a complaint must have facts that 'plausibly suppor[t]' that 'the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* (quoting *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016); *see also Littlejohn v. City of New York*, 795 F.3d 297, 309-10 (2d Cir. 2015) (an employment discrimination complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face)). "Under the more relaxed NYCHRL, 'a plaintiff need only show differential treatment of any degree based on a discriminatory motive.'" *Id.* (quoting *Keles v. Davalos*, 642 F. Supp. 3d 339, 376 (E.D.N.Y. 2022)).

> To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate "by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Williams [v. N.Y.C. Hous. Auth.,* 872 N.Y.S.2d] at 39; *accord Nelson v. HSBC Bank USA,* 87 A.D.3d 995, 929 N.Y.S.2d 259, 264 (2d Dep't 2011) (adopting the same standard of liability).

> Under this standard, the conduct's severity and pervasiveness[6] are relevant only to the issue of damages. *See*

---

[6] The Second Circuit explained:

> Section 8-107(1)(a) of the NYCHRL makes it "an unlawful discriminatory practice ... [f]or an employer or an employee or agent thereof, because of the ... gender ... of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a). Applying the Restoration Act's new rules of construction, the First Department has established a new standard of liability for gender discrimination under the NYCHRL.

12

*Williams,* 872 N.Y.S.2d at 38.  To prevail on liability, the plaintiff need only show differential treatment -- that she is treated "less well" -- because of a discriminatory intent.  *See id.* at 39.  Indeed, the challenged conduct need not even be "'tangible' (like hiring or firing)."  *Id.* at 40.

When applying this standard, however, district courts must be mindful that the NYCHRL is not a "general civility code."  *Id.* at 40-41 (internal quotation marks and citation omitted).  The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive.  It is not enough that a plaintiff has an overbearing or obnoxious boss.  She must show that she has been treated less well at least in part "*because of* her gender."  *Id.* at 39, 40 n. 27 (emphasis added).

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (internal footnotes omitted); *see Valerio v. Metro. Transp. Auth.*, No. 23cv1938 (DLC), 2024 WL 2305386, *9 (S.D.N.Y. May 20, 2024) (concluding that "[e]ven under the more lenient standards of the NYCHRL and NYSHRL, the plaintiff must show that she was treated less well because of a discriminatory motive").

---

Construing the phrase "discriminate against ... in terms, conditions or privileges of employment" broadly, the First Department reasoned that forcing a targeted employee to suffer "unwanted gender-based conduct" imposes a different term or condition of employment on her, even if the harassing conduct does not rise to the level of being "severe and pervasive."  *Williams,* 872 N.Y.S.2d at 38.  Therefore, the First Department declined to use the federal "severe and pervasive" standard for NYCHRL claims and instead adopted "a rule by which liability is normally determined simply by the existence of differential treatment."  *Id.*  To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate "by a preponderance of the evidence that she has been treated less well than other employees because of her gender."  *Id.* at 39; *accord Nelson v. HSBC Bank USA,* 87 A.D.3d 995, 929 N.Y.S.2d 259, 264 (2d Dep't 2011) (adopting the same standard of liability).

*Mihalik*, 715 F.3d at 109-10.

13

Accordingly, if Plaintiff would be unable to state a claim "even under the most lenient NYCHRL" standard based on the facts alleged, her claims under the NYSHRL and Title VII would similarly fail. *Bledsoe*, 2024 WL 1142321, at *2 (citing [*Yost v. Everyrealm, Inc.,* 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023)]; *see also Lettieri v. Anti-Defamation League Found.*, No. 22-cv-9889, 2023 WL 5152447, at *4 (S.D.N.Y. Aug. 10, 2023) (on a motion to dismiss, if NYCHRL claims fail, "parallel claims under Title VII and the NYSHRL fail, as well")); *cf. Farah v. Emirates & Emirates Severance Plan*, No. 21-CV-05786-LTS, 2024 WL 1374762, *5 (S.D.N.Y. Mar. 31, 2024) ("Given that Title VII has stricter pleading requirements than either the State or City laws, if Plaintiffs adequately state a claim under Title VII, they necessarily state a claim under both NYSHRL and NYCHRL.").

As Defendants argue, Plaintiff was able to outline many events in detail. For example, she laid out a verbatim conversation wherein her supervisor allegedly made comments about Plaintiff appearing "disengaged" and perhaps being "overwhelmed." *See* Compl. at ¶¶ 22-23. Similarly, she described a performance evaluation that included the phrases "not open to feedback," "aggressively resistant," "overly defensive," and "combative." *See id.* at ¶ 27. Plaintiff also detailed how her "workload had . . . been a challenge prior to the pandemic," that during the pandemic her job "became triaging the necessary work in the college [when she could not fill a vacant position on her team]," and that she was "overworked [and] consequently unable to participate in communal executive activities and functions that she would normally attend." *See id*. at ¶ 19.

However, Plaintiff fails to allege any non-conclusory facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Rather, Plaintiff alleges in broad,

14

conclusory fashion that there was "derogatory behavior" that either "referenced her sexual

orientation" or "involved gay stereotypes." *See* Compl. at ¶ 20.  As Defendants argue, while

Plaintiff was able to provide details, including quotes, about a variety of common workplace

situations, Plaintiff failed to quote even one specific utterance about "sexual orientation" or "gay

stereotypes."  Plaintiff also failed to provide details of such "derogatory behavior" that either

"referenced her sexual orientation" or "gay stereotypes."  While Plaintiff contends that phrases

such as "not open to feedback," "aggressively resistant," "overly defensive," and "combative" are

"words universally considered as derogatory and stereotypical language used to demean

lesbians," *see* Compl. at ¶ 27, the statements occurred in a negative performance evaluation.

Plaintiff does not indicate any overt connection with Plaintiff's sexual orientation.  Plaintiff's

contention that these are "words universally considered as derogatory and stereotypical language

used to demean lesbians," without some connection to Plaintiff's sexual orientation either in the

evaluation process or in other specific interactions in the workplace (which are totally absent), is

a broad conclusory allegation based upon Plaintiff's subjective beliefs, but it is not sufficient to

raise a plausible allegation of discrimination based on sexual orientation.  *Cf. Bickerstaff v.

Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (finding that a plaintiff's "[feelings and

perceptions] of being discriminated against [are] not evidence of discrimination" (citation

omitted)); *McDonald v. Maimonides Med. Ctr.,* No. CV-99-6849 (JG), 2002 WL 257818, * 6

(E.D.N.Y. Jan. 3, 2002) (finding that "McDonald's subjective feelings as to what Dunn might

have been thinking cannot amount to evidence of age discrimination").

> To defeat a motion to dismiss, a plaintiff need only plead
> facts from which the Court can plausibly infer a prima facie case of
> discrimination.  *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d
> Cir. 2019).  "[W]hile a discrimination complaint need not allege
> facts establishing each element of a prima facie case of
> discrimination to survive a motion to dismiss, it must at a

minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Equal Emp. Opportunity Comm'n v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (cleaned up). The elements of a prima facie case are "an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Yan v. Ziba Mode Inc.*, No. 15-CV-47, 2016 WL 1276456, at *3 (S.D.N.Y. Mar. 29, 2016) (cleaned up).

Accordingly, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. The alleged facts "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* Nonetheless, a complaint is properly dismissed if the plaintiff fails "to plead any facts that would create an inference that any adverse action taken by any defendant was based upon [a protected characteristic of the plaintiff]." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam) (cleaned up).

*Levy v. NYC Health + Hosps.*, 660 F. Supp. 3d 220, 230 (S.D.N.Y. 2023), *clarified on denial of reconsideration,* No. 21-CV-9142 (VEC), 2023 WL 4364203 (S.D.N.Y. July 6, 2023).

Here, Plaintiff fails to assert non-conclusory facts supporting even a minimal, plausible inference that her sexual orientation played any role in any adverse employment action Plaintiff experienced (*i.e.*, exclusion from meetings, loss of supervisory authority, failure to hire a manager, postponement of the re-branding project, discharge). Accordingly, the Court dismisses Plaintiff's Title VII and NYSHRL gender discrimination claims. For reasons discussed below, this dismissal is without prejudice to Plaintiff moving for leave to amend to cure the deficiencies that the Court has identified.

**C.**     **Title VII and NYSHRL hostile work environment claims**

Defendants also move to dismiss Plaintiff's Title VII and NYSHRL hostile work environment claims.  Plaintiff opposes this aspect of the motion.

"To establish a hostile work environment under Title VII . . ., a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (citations and internal quotation marks omitted)).  "The Second Circuit has held that 'proving the existence of a hostile work environment involves showing both "objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."'" *LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-CV-23 (KMK), 2023 WL 6610764, *8 (S.D.N.Y. Oct. 10, 2023) (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Alfano*, 294 F.3d at 374)).  A hostile work environment claim under Title VII requires a showing that the conduct occurred because of plaintiff's membership in a protected class.  *See Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).  "Abusive conduct in the workplace, if not based on a protected class, is not actionable under Title VII.  This statute prohibits discrimination, and is not a civility code." *Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575, 592 (S.D.N.Y. 2007) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)).

For reasons discussed above in connection with Plaintiff's gender discrimination claims, Plaintiff fails to present non-conclusory facts providing a minimal inference that the alleged abuse or harassment in the workplace was motivated by considerations of Plaintiff's sexual orientation.  Accordingly, the Court dismisses Plaintiff's Title VII hostile work environment claim.  This dismissal is without prejudice to Plaintiff moving for leave to amend to cure the deficiencies the Court has identified.

For the same reasons, the Court dismisses Plaintiff's NYSHRL hostile work environment claim.

> An amendment to the NYSHRL, effective October 11, 2019, has put in place a more lenient standard of liability that has been likened to that of the NYCHRL.  *See Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ. 02512 (CM), 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (amendment removed "severe and pervasive" requirement).  The amended NYSHRL applies to the claims in this case, which postdate the effective date of the amendment.  *See id.*; *cf. Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (amendments do not apply to conduct predating amendment's effective date).  The amended NYSHRL, like the NYCHRL, is to be construed "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." *McHenry [v. Fox News Network, LLC]*, 510 F. Supp. 3d [51,] 68 [(S.D.N.Y. 2020)] (alteration in original) (citing N.Y. Exec. Law. § 300).

> * * *

> To state a sexual harassment claim under the NYCHRL, a plaintiff need only simply allege facts showing that she "was subjected to 'unwanted gender-based conduct.'" *McHenry*, 510 F. Supp. 3d at 66 (quoting *Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015)).  Ultimately, a plaintiff "need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *Id.* (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)); *see also Williams*, 61 F.4th at 69 ("The plaintiff need only show that her employer treated her 'less well than other employees,' at least in part

for a discriminatory reason." (citation omitted)).  Those standards reflect that courts must "construe [the NYCHRL] broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Caravantes v. 53rd St. Partners, LLC*, No. 09 Civ. 7821 (RPP), 2012 WL 3631276, at *13 (S.D.N.Y. Aug. 23, 2012) (alterations omitted) (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78, 922 N.Y.S.2d 244, 947 N.E.2d 135 (N.Y. 2011)).  At the same time, "district courts must be mindful that the NYCHRL is not a general civility code," *McHenry*, 510 F. Supp. 3d at 66 (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76, 872 N.Y.S.2d 27 (2009)), and does not apply to conduct that "a reasonable victim would consider petty slights and trivial inconveniences," *Williams*, 61 F.4th at 69 (citation omitted).

*Yost*, 657 F. Supp. 3d at 579.

As stated above, the Complaint fails to provide any non-conclusory factual allegations indicating that Plaintiff was treated less well than other employees because of her sexual orientation.  Although Plaintiff alleges that she was the only openly gay individual on Defendant Dunifon's executive leadership team, that fact alone without any connection between Plaintiff's sexual orientation and the alleged workplace harassment is insufficient to withstand the instant motion. *See Mihalik*, 715 F.3d at 110; *see also Valerio v. Metro. Transp. Auth.*, No. 23cv1938 (DLC), 2024 WL 2305386, *9 (S.D.N.Y. May 20, 2024) (finding that, "[e]ven under the more lenient standards of the NYCHRL and NYSHRL, the plaintiff must show that she was treated less well because of a discriminatory motive.  Because there is no evidence that the plaintiff was treated less well because of her race, color, gender, or national origin, the plaintiff's NYCHRL and NYSHRL discrimination claims must fail").  Accordingly, the Court dismisses Plaintiff's NYSHRL hostile work environment claim.  This dismissal is without prejudice to Plaintiff moving for leave to amend to cure the deficiencies the Court has identified.

**D.**     **Title VII and NYSHRL retaliation claims**

Defendants move to dismiss Plaintiff's Title VII and NYSHRL retaliation claims, which Plaintiff opposes.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  "To establish a *prima facie* case of retaliation, the plaintiff must show that: '(1) [s]he was engaged in an activity protected under Title VII; (2) [her] employer was aware of [her] participation in the protected activity; (3) the employer took adverse action against [her]; and (4) a causal connection existed between the protected activity and the adverse action.'"  *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 459 (S.D.N.Y. 2023) (quoting *Zann Kwan [v. Andalex Grp. LLC]*, 737 F.3d [834,] 850 [(2d Cir. 2013)] (Barrington, J., concurring in part) (citing *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)).  "Accordingly, 'for a retaliation claim to survive ... a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against [her], (2) 'because' [s]he has opposed any unlawful employment practice.'"  *Id.* (quoting *Vega*, 801 F.3d at 90 (citation omitted)).  "'A plaintiff's burden at this prima facie stage is de minimis.'"  *Id.* (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted)).

> For a Title VII retaliation claim, "the standard for adverse employment action [is] a materially adverse change in the terms, privileges, duration and conditions of employment." *Treglia*, 313 F.3d 713, 720 (2d Cir. 2002).  "The Supreme Court [ ] held that in

the context of a Title VII retaliation claim, an adverse employment
action is any action that 'could well dissuade a reasonable worker
from making or supporting a charge of discrimination.'" *Vega*, 801
F.3d at 90 (quoting *Burlington [N. & Santa Fe Ry. Co. v. White*,]
548 U.S. [53,] 57 [(2006)]; *see also Hicks v. Baines*, 593 F.3d 159,
162 (2d Cir. 2010).

As the Second Circuit described in *Hicks v. Baines*, the
Supreme Court recognizes that "Title VII's anti-discrimination and
anti-retaliation provisions 'are not coterminous'; anti-retaliation
protection is broader and 'extends beyond workplace-related or
employment-related retaliatory acts and harm.'" *Hicks v. Baines*,
593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N. & Santa
Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  Although Title VII
"does not set forth a general civility code for the American
workplace," *Hicks*, 593 F.3d at 165 (quoting *White*, 548 U.S. at 68-
69), "the alleged acts of retaliation need to be considered both
separately and in the aggregate, as even minor acts of retaliation
can be sufficiently 'substantial in gross' as to be actionable." *Id.*
(quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d
Cir. 2006)).

*Mwantuali v. Hamilton Coll.*, No. 6:22-CV-1395 (MAD/ML), 2024 WL 1219752, *20

(N.D.N.Y. Mar. 20, 2024).

"Retaliation claims under Title VII and the NYSHRL are generally subject to the same

standard." *Id.* at *19 (citing *Kirkland-Hudson*, 665 F. Supp. 3d at 459; *Goonewardena v. N.Y.*

*Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343-44 (S.D.N.Y. 2017) (treating retaliation claims

under Title VII, § 1983, and the NYSHRL under the same standard)).  However, for claims that

accrue on or after the effective date of the NYSHRL October 11, 2019 amendments, the standard

for such claims is "closer to the standard under the NYCHRL." *Wellner v. Montefiore Med. Ctr.*,

No. 17 Civ. 3479, 2019 WL 4081898, *5 n.4 (S.D.N.Y. Aug. 29, 2019).  "'The elements of

retaliation under the NYCHRL differ [from the pre-amendment NYSHRL] only in that the

plaintiff need not prove any adverse employment action; instead, [s]he must prove that

21

something happened that would be reasonably likely to deter a person from engaging in protected activity.'" *Mwantuali*, 2024 WL 1219752, at *19 (quoting *Gutierrez v. City of N.Y.*, 756 F. Supp. 2d 491, 509 n.12 (S.D.N.Y. 2010)).

Thus, to state a retaliation claim under either Title VII or the NYSHRL applying the NYCRL standard, "'a plaintiff . . . must show "'that there was a causal connection between the protected activity and the employer's subsequent action.'"'" *Mwantuali* , 2024 WL 1219752, at *20 (quoting *Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021) (quoting *Adams v. Equinox Holdings, Inc.*, No. 19-CV-08461, 2020 WL 5768921, *6 (S.D.N.Y. Sept. 28, 2020) (other citations omitted))).  "With respect to the causation element for a claim of retaliation, 'a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity.'" *Kirkland-Hudson*, 665 F. Supp. 3d at 462 (quoting *Vega*, 801 F.3d at 90).  A plaintiff can demonstrate the causal connection in one of two ways: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (citation omitted); *see also Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 443 (S.D.N.Y. 2019) (same).

> Under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citing [*Univ. of Tex. Sw. Med. Ctr. v.] Nassar*, 570 U.S. [338,] 360, 133 S. Ct. 2517, [186 L.Ed.2d 503 (2013)]).  "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action"; instead, it requires only that absent the retaliatory motive, the adverse action would not have occurred.  *Duplan [v. City of*

22

> *N.Y.*, 888 F.3d 612,] 625 [(2d Cir. 2018)] (quoting *Vega*, 801 F.3d
> at 90-91); *see also Heiden v. N.Y. City Health & Hosps. Corp.*, No.
> 20-CV-10288, 2023 WL 171888, at *22 (S.D.N.Y. Jan. 11, 2023)
> (concluding that but-for causation applies to NYSHRL retaliation
> claims); *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276,
> 288-89 (S.D.N.Y. 2020) (analyzing a motion to dismiss plaintiff's
> NYSHRL retaliation claim under but-for causation standard);
> *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 n.22
> (S.D.N.Y. 2020) (collecting cases).  However, "the but-for
> causation standard does not alter the plaintiff's ability to
> demonstrate causation through temporal proximity." *Vega*, 801
> F.3d at 91 (alterations, quotation marks, and citation omitted).

*Kirkland-Hudson* , 665 F. Supp. 3d at 462.

In the Complaint, Plaintiff alleges that, after two conversations with Defendant Dunifon around the 2021 Labor Day weekend, Plaintiff complained to Cornell's Title IX office "alleging discrimination on the basis of her sex/gender and/or sexual orientation."  *See* Compl. at ¶ 24.  In her brief in opposition to Defendants' motion, Plaintiff argues that she satisfies the temporal proximity element of a retaliation claim.  *See* Dkt. No. 12-1 at 14.  In making this argument, Plaintiff focuses on her termination on June 15, 2022, as the subject adverse action and argues that "throughout her disability leave from April 19, 2022 through May 31, 2022 . . .  she complained to the Title IX office of sex/gender discrimination on the basis of her sex/gender and/or sexual orientation."  *Id.* (citing Compl., at ¶¶ 24, 30).  Thus, she contends, she has sufficiently alleged that her protected activity was closely followed in time by the adverse employment action of termination, which occurred approximately two weeks following the end of her disability leave.  *Id.*  These arguments are insufficient.

Paragraph 24 of the Complaint alleges merely that Plaintiff complained to the Title IX Office following the 2021 Labor Day weekend conversations with Defendant Dunifon and that the Title IX investigator subsequently facilitated a meeting in late December during which

Plaintiff felt that her complaints were minimized.  However, the six-month lapse between December 2021 and June 15, 2022 (when Plaintiff was discharged), by itself, is too attenuated to support causation based upon temporal proximity.  *See Kirkland-Hudson*, 665 F. Supp. 3d at 464 ("There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." (quoting *De Figueroa v. N.Y.*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (citing *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503-04 (S.D.N.Y. 2010) (collecting cases))); *see also Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("Generally, to show causation through temporal proximity alone, courts in this Circuit require no more than two months to have passed between a protected activity and an adverse action.")).

Paragraph 30 of the Complaint merely alleges that during Plaintiff's leave, she "was in communication with the Title IX office."  *See* Compl. at ¶ 30.  As Defendants point out, the Complaint says nothing about the substance of those communications with the Title IX office or who knew about them, and thus there is no detail from which a plausible inference about temporal proximity could be drawn.  *See* Dkt. No. 13 at 4.  Be that as it may, however, Plaintiff may be able to provide sufficient factual allegations to connect her communications with the Title IX office during her leave with her termination that would support adequate temporal proximity.  Because Plaintiff will be granted leave to file a formal motion for leave to amend her complaint (discussed below), Plaintiff will have the opportunity to address this pleading deficiency.[7]  For present purposes, however, the Court grants Defendants' motion in this regard

---

[7] The Court notes that Plaintiff may be able to establish sufficient temporal proximity to other employment decisions that might dissuade a reasonable worker from making or supporting a charge of discrimination.  For instance, Plaintiff alleges that following her complaint to the Title IX office, "[she] felt excluded, marginalized, and set up.  For example, she was excluded from critical meetings, ignored, talked down to, and made the subject of mockery and

and dismisses Plaintiff's Title IV and NYSHRL retaliation claims.  Dismissal is without prejudice to Plaintiff moving for leave to amend to cure the deficiencies the Court has identified.

### E.    Leave to amend

In her brief, Plaintiff seeks leave to amend "her claims of employment discrimination in Count IV, hostile work environment in Count V, and retaliation in Count VI of the Complaint -- each alleged to be in violation of NYSHRL -- and add Defendant Rachel Dunifon in her individual capacity for the aiding, abetting, inciting, compelling, or coercing discriminatory and retaliatory acts." *See* Dkt. 12-1 at 15.  "Plaintiff also seeks leave to amend her Compliant [sic] to add claims under NYSHRL, as follows: (1) employment discrimination based upon sexual orientation, and (2) hostile work environment based upon sexual orientation." *See id.* at 16. Plaintiff also argues that, "in the event the Court is inclined to grant any or all parts of Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff respectfully requests leave to amend the Complaint to correct any such deficiencies." *See id.* at 17.

A motion to amend is governed by Federal Rule of Civil Procedure 15, which provides that leave to amend a pleading should be freely granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2). "Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." *Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)); *see also  Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d

---

stereotypical references to her gender and sexual orientation." *See* Compl. at ¶ 25.  However, Plaintiff, who is represented by counsel, did not make this specific argument, and the Court is not inclined to rule upon an issue that the parties have not addressed.

Cir. 2008) (noting that "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party" (citation omitted)).  "The decision to grant or deny a motion to amend . . . is committed to the sound discretion of the trial court[,] and the court's decision is not subject to review on appeal except for abuse of discretion." *Bradshaw v. Annucci*, No. 9:23-CV-0602 (MAD/ML), 2024 WL 3519686, *3 (N.D.N.Y. July 24, 2024) (citations omitted).

Further, Northern District of New York Local Rule 15.1(a) provides, in relevant part, as follows: "[A] motion [to amend] must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means."  N.D.N.Y. L.R. 15(a).  Failure to comply with the Local Rules can result in denial of a motion to amend.  *See Cottone v. Does*, No. 1:17-cv-1006 (DNH/TWD), 2018 WL 2021513, *4 (N.D.N.Y. Apr. 30, 2018).  Plaintiff has not presented a redline/strikeout version of her proposed amended complaint or an equivalent demonstration of the proposed insertions and deletions of language.

Plaintiff's application to amend her claims of employment discrimination in Count IV, hostile work environment in Count V, and retaliation in Count VI to add Defendant Rachel Dunifon in her individual capacity "for the aiding, abetting, inciting, compelling, or coercing discriminatory and retaliatory acts" is, at this stage, futile.  Indeed, while Plaintiff may be able to resurrect the claims in Count IV, Count V, and Count VI through a motion to amend, at this stage these claims have all been dismissed.  Thus it would be futile to amend to add Defendant Dunifon for aiding, abetting, inciting, compelling, or coercing the alleged discriminatory and

retaliatory acts set forth in each of these Counts.  Furthermore, Plaintiff's application to amend must be denied on procedural grounds because Plaintiff has not complied with Local Rule 15.1(a).

For similar reasons, the Court denies Plaintiff's application for leave to amend to add claims under the NYSHRL for (1) employment discrimination based upon sexual orientation, and (2) hostile work environment based upon sexual orientation.  As it stands, Plaintiff's NYSHRL claims against Cornell for (1) employment discrimination based upon sexual orientation, and (2) hostile work environment based upon sexual orientation, have been dismissed for failure to state sufficient claims.  Without further elaboration of the substance of the claims Plaintiff seeks to add, it would be futile to amend these dismissed claims to add some unidentified allegations.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (stating that "[d]enial of leave [to amend] might be proper where a plaintiff's request was inconspicuous and never brought to the court's attention, . . . or where the request gives no clue as to 'how the complaint's defects would be cured'" (citations omitted)); *see also Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (stating that "'[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to  dismiss. . . .'" (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (other citation omitted))).

Finally, Plaintiff's request for leave to amend the Complaint "to correct any . . . deficiencies" the Court has identified, on this record, is insufficient to warrant amendment. Without providing a proposed amended complaint in compliance with Local Rule 15.1(a), the Court has no way of knowing whether the sought-after amendment provides sufficient non-conclusory allegations that would withstand a motion to dismiss; and, thus, the Court has no way

of knowing whether the sought-after amendments would be futile.  *See Loreley Fin.*, 797 F.3d at

190; *Annunziato*, 293 F.R.D. at 333.

  Nevertheless, because leave to amend should generally be freely granted, and because of

the often-stated judicial preference to resolve matters on the merits and not on procedural

default, *Joe Hand Promotions, Inc. v. Kessler*, No. 5:20-cv-894 (TJM/ML), 2021 WL 4262665,

\*2 (N.D.N.Y. Sept. 20, 2021) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir.

1993)) (other citations omitted), the Court denies Plaintiff's application for leave to amend but,

as indicated above, dismisses most of the claims in the Complaint without prejudice to Plaintiff

moving for leave to amend.

## V. CONCLUSION

  Having reviewed the entire file in this matter, the parties' submissions, and the applicable

law, and for the above-stated reasons, the Court hereby

  **ORDERS** that Defendants' motion to dismiss, *see* Dkt. No. 9, is **GRANTED**.  All Title

VII claims brought against Defendant Rachel Dunifon are **DISMISSED WITH PREJUDICE**.

All other claims in the Complaint are **DISMISSED WITHOUT PREJUDICE to Plaintiff**

**moving for leave to amend**.  If Plaintiff elects to move for leave to amend, she must do so

within twenty-one (21) days of the date of this Memorandum-Decision and Order.  If Plaintiff

fails to move for leave to amend within the allotted time, the Clerk of the Court is instructed to

enter judgment dismissing all claims with prejudice and close the file in this matter without

further Order of the Court.

**IT IS SO ORDERED**.

Dated: July 25, 2024
   Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge